Karole K. JENSEN, as Administratrix of the Estate of Sylvia R. Brown, Deceased, Plaintiff,

v.

Virgil L. CONRAD, in his individual and official capacity as Commissioner of the Department of Social Services; Robert Kneece, Fred G. Scott, Samuel Smith, Agnes Wilson, Oscar P. Butler, Jr., John C. Williams, Jr., and Lucy C. Trower, individually and in their official capacities as members of the State Board of the Department of Social Services; Collie L. Moore, W.H. Neal, Catherine Morris, Allen Dowdy, Arlene B. Andrews, Beatrice Sumter, Robert E. Alexander, Melissa Burnette, individually and in their official capacities as members of the Richland County Board of the Department of Social Services; Mary Williams and Patricia Jones, individually and in their official capacities as Social Workers for the South Carolina Department of Social Services; and Barbara Locklair, individually and in her official capacity as a "Home Health Nurse" for the South Carolina Department of Social Services, Defendants.

Civ. A. No. 82–2061–15.

United States District Court, D. South Carolina, Columbia Division.

March 4, 1983.

Supplemental Opinion July 18, 1983.

O. Fayrell Furr, Jr., Columbia, S.C., for plaintiff.

George C. Beighley, John L. Choate, Joel H. Smith, William C. Hubbard, Charles E. Hill, David W. Robinson, II, Wilburn Brewer, Jr., James L. Werner, Columbia, S.C., for defendants.

## ORDER

HAMILTON, District Judge.

This matter comes before the court upon three motions to dismiss for failure to state a claim upon which relief may be granted, filed by the defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The first motion was filed on November 15, 1982, by defendants Conrad, Kneece, Wilson, Butler and Williams, the Commissioner of the South Carolina Department of Social Services (hereinafter "Commissioner") and the members of the State Board of the Department of Social Services (hereinafter "State Board"), respectively. All defendants were sued both in their individual and official capacities. This motion was later joined by three other members of the State Board, Ms. Lucy C. Trower (January 11, 1983), Mr. Samuel Smith (February 23, 1983) and Mr. Fred G. Scott (March 2, 1983). The cause behind their delay in joining the motion to dismiss was attributed to delay in service of process.

The second motion to dismiss was filed on November 16, 1982, by the defendants, Moore, Neal, Morris, Andrews, Sumter, Alexander and Burnette, members of the Richland County Board of the Department of Social Services (hereinafter "County Board") who were also sued by the plaintiff in their individual and official capacities. This motion was later joined by defendant board member Allen Dowdy on January 10, 1983.

The third motion to dismiss was filed by the defendant Barbara Locklair in her individual and official capacity, on January 13, 1983. At oral argument on the motions to dismiss, held February 25, 1983, the court was advised that Ms. Locklair is employed

by the South Carolina Department of Health and Environmental Control as a home health nurse.

In analyzing the motions to dismiss, the court will first assess the viability of the plaintiff's complaint as asserted against the Commissioner and Barbara Locklair in their official capacities and against the State Board members in their official capacities. Next the court will address the motion to dismiss filed by the members of Richland County Board in their official capacities. Finally, the court will turn to an analysis of all three motions to dismiss asserted by defendants in their individual capacities.

## COMMISSIONER, STATE BOARD AND BARBARA LOCKLAIR OFFICIAL CAPACITIES

Karole K. Jensen, as Administratrix of the Estate of Sylvia R. Brown, a deceased minor, brings this action against (1) the Commissioner of the South Carolina Department of Social Services (2) members of the State Board of the South Carolina Department of Social Services (3) members of the Richland County Board of the Department of Social Services (4) two social workers employed by the South Carolina Department of Social Services and (5) Mrs. Barbara Locklair, a home health nurse employed by the South Carolina Department of Health and Environmental Control. Ms. Jensen brings this action pursuant to 42 U.S.C. §§ 1983 and 1988. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the U.S. or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In this action, Ms. Jensen alleges that these defendants deprived her decedent, Sylvia Brown, of her Fourteenth Amendment right to life by their failure to protect her from the physical abuse inflicted upon her by her parent(s), such abuse being the ultimate cause of her death on May 11, 1979. The complaint also asserts a pendent state claim brought pursuant to the South Carolina Wrongful Death Act, §§ 15–51–10, 15–51–20 and 15–51–40 of the Code of Laws of South Carolina 1976, as amended, for the benefit of the statutory beneficiaries of the deceased. Plaintiff seeks actual and punitive damages, an award of reasonable attorneys fees and costs, and such other relief as this court would deem just and proper.

At the motions hearing held on February 25, 1983, the court raised, *sua sponte,* and does now address, the question of the applicability of the Eleventh Amendment of the United States Constitution to the suit against the Commissioner, the State Board and Barbara Locklair in their official capacities. The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Although, by its terms, the Amendment does not preclude suits against a state by its own citizens, the Supreme Court has held that a state is immune from suits brought in federal courts by its own citizens as well as by citizens of another state or citizens or subjects of any foreign state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Duhne v. New Jersey,* 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); and *Employees v. Department of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). Moreover, it is well settled that the Eleventh Amendment bars a suit against a state agency, entity or institution, such as the Department of Social Services and its

governing body, the State Board, which functions as an arm or *alter ego* of the state. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). That this suit is brought against the Commissioner, Barbara Locklair, and the members of the State Board "individually and in their official capacity" does not alter the fact that it is brought against the Department of Social Services and the Department of Health and Environmental Control, with respect to Ms. Locklair. As set forth by the Third Circuit in *Laskaris v. Thornburgh,* 661 F.2d 23 (1981):

[A]n action in federal court for damages or back pay against a state official acting in his official capacity is barred [by the Eleventh Amendment] because such retrospective relief necessarily depletes the state treasury. *Id.* at 26.

■ Also, as set forth by the Fourth Circuit in the 1982 case of *Hughes v. Blankenship,* 672 F.2d 403 (4th Cir.1982):

Official capacity suits represent but another way of pleading an action against the entity of which the officer is an agent, *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity itself. *Monell, supra; Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980).

Similarly, the Supreme Court in *Edelman v. Jordan, supra,* stated, "It is also well established that even though a state is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Edelman* at 94 S.Ct. 1355.

■ Therefore, the rule has evolved that a suit seeking to impose a liability which must be paid from public (state) funds is barred by the Eleventh Amendment. *Edelman* at 94 S.Ct. 1356. In the instant suit, any recovery by the plaintiff against the Commissioner, Barbara Locklair and the State Board members in their official capacities would require payment from public funds which is impermissible under the Eleventh Amendment. *Belcher v.*

*South Carolina Board of Corrections,* 460 F.Supp. 805 (1978). Therefore, the court is of the opinion, based on *Laskaris, supra, Edelman, supra,* and *Hughes, supra,* that a suit against members of the State Board of the Department of Social Services in their official capacities and against Barbara Locklair and the Commissioner in their official capacities which seeks damages is a suit against the state of South Carolina for purposes of Eleventh Amendment analysis.

■ The immunity afforded the states by the Eleventh Amendment can be overcome if the state waives its constitutional immunity and consents to suit or, with respect to the Thirteenth, Fourteenth and Fifteenth Amendments to the United States Constitution if Congress abrogates the state's immunity pursuant to its authority to enforce the substantive provisions of those amendments "by appropriate legislation." Amendment XIII, Section 2; Amendment XIV, Section 5; Amendment XV, Section 2. The doctrine of sovereign immunity prevails in South Carolina. *Belue v. City of Spartanburg,* 276 S.C. 381, 280 S.E.2d 49 (1981). Clearly, the state has not waived its immunity regarding claims such as those asserted by the plaintiffs herein. Additionally, Congress did not exercise its power to abrogate the state's Eleventh Amendment immunity in enacting 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir.1981) and *Gourdine v. Ellis,* 435 F.Supp. 882 (D.S.C.1977). In summary, absent consent to suit or federal legislation abrogating its Constitutional immunity, neither the state nor its *alter egos,* the State Board, the Commissioner and Barbara Locklair, sued in their *official* capacities, are subject to suit under 42 U.S.C. § 1983. (emphasis added).

## COUNTY BOARD MEMBERS—OFFICIAL CAPACITIES

■ As stated previously, a suit against a public official in his official capac-

ity is treated as a suit against the entity, therefore this suit against the Richland County Board of the Department of Social Services is for all purposes a suit against Richland County.[1] *Hughes v. Blankenship, supra; Laskaris v. Thornburgh, supra* and *Universal Amusement Co. v. Hofheinz,* 646 F.2d 996 (5th Cir.1981). In *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), the Supreme Court held that a local government may be liable under § 1983 for an injury caused by a "policy or custom ... made by its lawmakers or ... those whose edicts or acts may fairly be said to represent official policy ...." These constitutional deprivations may be "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." 436 U.S. at 691, 98 S.Ct. at 2036. Additionally, the Fourth Circuit has held in the 1981 case of *Avery v. County of Burke,* 660 F.2d 111 (4th Cir.1981) that official policy may be established by the omissions of supervisory officials as well as from their affirmative acts. In *Avery,* the plaintiff alleged that the county, its board of health and its board of social services, and several individuals wrongfully caused her sterilization after informing her that she had sickle cell trait. The Fourth Circuit, in reversing the district court's grant of summary judgment in favor of the county and its boards, asserted:

> [T]he conduct of the boards may be actionable if their *failure to promulgate policies and regulations rose to the level of deliberate indifference to Avery's right of procreation or constituted tacit autho-*

*rization of her sterilization.* (emphasis added) [cites omitted] *Id.* at 114.

In view of the Fourth Circuit's pronouncement in *Avery* and the Second Circuit's decision of *Doe v. New York City Department of Social Services,* 649 F.2d 134 (2d Cir.1981), discussed *infra,* the court is of the opinion that the plaintiff's complaint should not be dismissed under Rule 12(b)(6) for failure to state a claim as against the County Board members sued in their official capacities. Under the test applicable to a motion to dismiss as set forth by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), this court cannot *now* hold that, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."

Therefore, plaintiff's cause of action pursuant to 42 U.S.C. §§ 1983 and 1988 asserted against the County Board members in their official capacities stands. However, the court does hold, in accordance with the Supreme Court's ruling in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) that the plaintiff, Ms. Jensen, would not be entitled to recover punitive damages against the County Board members in their official capacities should she be successful on the underlying action brought pursuant to 42 U.S.C. § 1983.

Although not addressed by counsel for the County Board, the court is constrained to raise *sua sponte* the viability of the plaintiff's claim against that entity under the South Carolina Wrongful Death Act, §§ 15–51–10, 15–51–20 and 15–51–40 of the Code of Laws of South Carolina 1976,

---

1. During oral argument the question arose as to whether the Richland County Board of the Department of Social Services was but the *alter ego* of the South Carolina Department of Social Services and thereby entitled to immunity from suit in this court under the Eleventh Amendment principles discussed earlier. There is no information in the record as to the relationship between this board and the state agency for purposes of Eleventh Amendment analysis. As set forth by the Supreme Court in *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d

471 (1977), the relevant issue is whether the County Board is "to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or ... as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *See also, Holley v. Lavine,* 605 F.2d 638 (2nd Cir. 1979). In view of the inadequacy of the record at this time, the court reserves for later decision the question of the applicability of Eleventh Amendment immunity to the County Board.

as amended. As set forth in 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1973): "Even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim."

 As noted previously, the doctrine of sovereign immunity prevails in the state of South Carolina. *Belue v. City of Spartanburg,* 276 S.C. 381, 280 S.E.2d 49 (1981). Neither the state nor any of its political subdivisions can be held liable in an action *ex delicto* unless by express enactment of the General Assembly. *Graham v. Charleston County School Board,* 262 S.C. 314, 204 S.E.2d 384 (1974). Since there has been no enactment of the General Assembly authorizing an action for wrongful death against a County Board of the Department of Social Services, plaintiff's pendent claim against that entity under the South Carolina Wrongful Death Act should be dismissed. *See also, Belton v. Richland Memorial Hospital,* 263 S.C. 446, 211 S.E.2d 241 (1975) and *Chilton v. City of Columbia,* 247 S.C. 407, 147 S.E.2d 642 (1966).

## ALL DEFENDANTS—INDIVIDUAL CAPACITIES

 Turning now to defendants' motions to dismiss as applied to their individual capacities, the court notes that the defendants largely, and correctly, rely on the doctrine of qualified immunity from suit available to public officials under the recent United States Supreme Court decision of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[2]

In *Harlow,* the Supreme Court held:

We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known. Citing *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). *Id.* at 102 S.Ct. 2738.

Prior to *Harlow,* good faith immunity was available to public officials sued in their individual capacities in actions for damages unless (1) the official knew or reasonably should have known that the action he took within the sphere of his official responsibilities would violate the constitutional rights of the plaintiff or (2) he took the action with malicious intention to cause a deprivation of constitutional rights or other injury. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The two prongs of this analysis were referred to as the "objective" and "subjective" elements, respectively. The Supreme Court in *Harlow* rejected the second exception to good faith immunity, the "subjective" element, noting that, "[t]he subjective element of the good faith defense frequently has proved incompatible with our admonition in *Butz* [*Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)] that insubstantial claims should not proceed to trial." *Harlow* 102 S.Ct. at 2737.

 Therefore, the court must proceed to analyze the availability of qualified immunity to the defendants under the "objective element" analysis set forth in *Wood* and clarified in *Harlow.* First, however, the court would like to address two points: The first is that the decision in *Harlow,* which involved a suit against a federal government official under the Constitution, is equally applicable to suits against state officials sued in their individual capacities for constitutional violations under § 1983. As set forth in footnote 30 of *Harlow:*

This case involves no issue concerning the elements of the immunity available to state officials sued for constitutional vio-

---

**2.** It is perhaps important to make clear at the outset of this section that qualified immunity insulates public officials only from liability in their individual capacities. *Hughes v. Blankenship,* 672 F.2d 403 (4th Cir.1982). It is not available to a governmental official sued in his official capacity since that is treated as a suit against the entity. *Universal Amusement Co. v. Hofheinz,* 646 F.2d 996 (5th Cir.1981).

lations under § 1983. *We have found previously, however, that it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.* (emphasis added). *Butz v. Economou,* 438 U.S., at 504, 98 S.Ct., at 2909.

Additionally, the Fourth Circuit, in the case of *Ward v. Johnson,* 690 F.2d 1098 (4th Cir.1982), has proceeded to determine the availability of qualified immunity under the *Harlow* analysis to a state prison official sued under § 1983. In *Ward,* the chairman of the prison adjustment committee was sued for an alleged violation of an inmate's constitutional right in the course of a disciplinary hearing. Although the *en banc* court found that the chairman was entitled to absolute immunity, it also noted the following in a well-reasoned opinion by Judge Russell:

> Though we are convinced and so hold that the defendant Gardner under the facts of this case was entitled to absolute immunity from an award of damages in favor of the plaintiff, we would perhaps be remiss not to take note of the possibility that the defendant Gardner may have been likewise qualifiedly immune from damages liability. *Id.* at 1110.

Judge Russell then analyzed the availability of qualified immunity under the "objective element" test of *Harlow, Butz,* and *Wood.* The court also notes that the Sixth Circuit, at the direction of the Supreme Court, has applied *Harlow* qualified immunity analysis to Ohio parole officers in a suit under § 1983. *Wolfel v. Sanborn,* 691 F.2d 270 (6th Cir.1982).

The second point that the court would like to address concerns the availability of the defense of qualified immunity on a motion to dismiss. As set forth by the Fourth Circuit in *Ward:*

> Finally, it [the Supreme Court] concluded that it was appropriate for the *judge* (emphasis added) to 'determine, not only the currently applicable law, [and] whether that law was clearly established at the

time an action occurred' and that, if the court determined that it was not 'clearly established' at that time, a grant of summary judgment, based on the officials qualified immunity right, was in order. quoting *Harlow. Id.* at 1111.

 A motion for summary judgment and a motion to dismiss for failure to state a claim are, of course, very closely related, as the final sentence of Federal Rule of Civil Procedure 12(b) makes clear. Therefore, this court is convinced that the "threshold immunity question" is appropriate on a motion to dismiss. As the Fourth Circuit noted in its analysis of *Harlow:* "It [the Supreme Court] proceeded to declare that '[u]ntil this threshold immunity question is resolved, discovery [or further proceedings in the case] should not be allowed.'" *Ward* at 1111.

Turning now to an analysis of the "objective element" of qualified immunity as it applies to the defendants sued in their individual capacities, the threshold question to be answered is *whether the constitutional right which the plaintiff claims was violated by the defendants was "clearly established" at the time of the alleged violation.* (emphasis added).

 The *Harlow* standard is the objective element of qualified immunity announced in *Wood v. Strickland, supra.* Therefore, in attempting to determine whether a federal right is considered "clearly established," reliable guidance can be drawn from the lower court decisions that have interpreted the objective test found in *Wood.* Smith, *Qualified Immunity From Liability for Violations of Federal Rights—A Modification,* The Institute of Government—Chapel Hill, N.C. (January 1983).

The plaintiff in the instant case contends that:

> Defendant clearly knew or should have known that not only was the Plaintiff's decedent entitled to his Fourteenth Amendment right to life but furthermore, Defendants knew or should have known that under the laws or customs of

the State of South Carolina, more particularly by S.C.Code, § 20–7–640, *et seq.* (recodified in 1981), they were charged with an affirmative duty to investigate, care for, and protect the welfare of the Plaintiff's decedent. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at page 7.

However, an official's knowledge of a general constitutional provision, such as the Fourteenth Amendment, does not always tell him whether proposed action or inaction would violate that general constitutional provision. The defense of qualified immunity depends instead on an analysis of whether the courts have decided that a *particular right* is included within the protection of a general constitutional provision. (emphasis added). *Smith, supra.* This important distinction was explored in the Supreme Court case of *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) and also noted in the lower court decisions of *Sullivan v. Meade Independent School District,* 530 F.2d 799 (8th Cir.1976) and *Tate v. Alexander,* 527 F.Supp. 796 (M.D.Tenn.1981).

Therefore, in the instant case, the question is not whether the defendants knew or should have known of the general Fourteenth Amendment prohibition against the deprivation of life without due process of law. The question is whether the law at the time of the incident complained of "clearly established" that their failure to promulgate and implement training programs for social workers dealing with abusive parents or their failure to adequately supervise the workers rendered them liable to a child subsequently killed by its parents for the deprivation of its Fourteenth Amendment right to life.

Whether or not a federal constitutional right is "clearly established" at the time of the alleged wrongful acts depends on a review of the opinions of the Supreme Court, the appropriate court of appeals and of the highest court of the state involved *Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980). The plaintiff has drawn the court's attention to the 1981 case of *Doe v.*

*New York City Department of Social Services,* 649 F.2d 134 (2d Cir.1981), a case which involved an action against a placement agency for the failure to protect an abused child from beatings and sexual abuse inflicted by her foster father. The *Doe* case does present a factual situation in some ways analogous to the case at hand and suggests that a cause of action would lie under § 1983 against an agency charged with default in the exercise of an affirmative duty if (1) the omission was a *substantial factor* leading to the denial of a constitutionally protected liberty or property interest and (2) the officials in charge of the agency being sued displayed a mental state of *"deliberate indifference"* in order to "meaningfully be termed culpable under § 1983." (emphasis added). [cites omitted]. *Id.* at.141. However, this case postdates the acts complained of herein by two years and is, therefore, irrelevant for purposes of our analysis in that *Harlow* holds:

> If the law *at the time* was not clearly established, an official could not reasonably be expected to anticipate *subsequent legal developments,* nor could he fairly be said to "know" that the law forbade conduct *not previously identified* as *unlawful* ... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.
>
> . . . .
>
> ... The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. *But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of conse-*

quences." [citing] *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). (emphasis added). *Harlow,* 102 S.Ct. at 2739.

█ Plaintiff would also assert that defendants' inaction subjects them to liability for the deprivation of decedent's life pursuant to the duties imposed by § 20–7–640 *et seq.* of the South Carolina Code of Laws 1976, as amended. It is true that §§ 20–7–640 and 20–7–650 outline the general responsibilities of the Department of Social Services and the local agency with respect to reporting and referral of cases of child abuse, the promulgation of programs, the facilitation research in the area, and the staffing and training of its investigative services. However, the court is not of the opinion that notice of these duties is tantamount to a conclusion that the law "clearly established" that the defendants' failure to provide adequate training for social workers responsible for detecting child abuse or failure to supervise would subject them to liability under the Fourteenth Amendment of the United States Constitution.

█ It can hardly be said that in May of 1979 the law "clearly established" that an action for civil liability premised under the Fourteenth Amendment would lie against a state or county department of social services board member or home health care nurse for the failure to adequately train or supervise social workers dealing with abusive parent(s) when this court is not convinced in March of 1983 that such a cause of action exists. If this judge of a federal court is uncertain, is it fair to find the defendants liable because they, too, were uncertain? *Ward v. Johnson,* 690 F.2d 1098 (4th Cir.1982). This court finds that the State Board members, the County Board members, and Barbara Locklair, sued in their *individual capacities* are entitled to the defense of qualified immunity as set forth in *Harlow* and does hereby grant their motions to dismiss as to all causes of action alleged in the complaint. (emphasis added).

For the foregoing reasons and in view of the cited authorities,

IT IS HEREBY ORDERED that the complaint be dismissed in its entirety as against the Commissioner, the members of the State Board of the Department of Social Services and Barbara Locklair sued in both their official and individual capacities.

IT IS FURTHER ORDERED that the complaint as it asserts a cause of action against the members of the Richland County Board of the Department of Social Services in their individual capacities be dismissed in its entirety.

IT IS FURTHER ORDERED that the cause of action under the South Carolina Wrongful Death Act, §§ 15–51–10, 15–51–20 and 15–51–40 of the Code of Laws of South Carolina 1976, as amended, be dismissed as against the members of the Richland County Board of the Department of Social Services sued in their official capacities.[3]

SUPPLEMENTAL OPINION

This matter is before the court upon plaintiff's two-pronged motion: to amend or alter this court's judgment of March 4, 1983, and for leave to file an amended complaint. These motions are brought pursuant to Rule 59(e) and Rule 15(a) of the Federal Rules of Civil Procedure, respectively. Rule 59 generally provides for the grant of a new trial or for the alteration or amendment of a *judgment* (emphasis added). This court's order of March 4, 1983, did not result in a judgment against the plaintiff since the court did not direct the entry of final judgment pursuant to Rule 54(b). Nonetheless, under the court's inherent power to reconsider and revise any interlocutory order, as recognized by Rule 54(b), the court has considered in great detail the arguments set forth by the plaintiff in her motion and accompanying memoranda. Upon serious reconsideration of the matter, the court adheres to and does here-

---

**3.** As it remains, plaintiff's complaint asserts causes of action against the members of the Richland County Board of the Department of

Social Services sued in their official capacities under 42 U.S.C. §§ 1983 and 1988.

by expand the scope of its ruling of March 4, 1983.

After hearing oral argument on the instant motion to reconsider/amend on June 28, 1983, and conducting extensive research on the claims presented by the plaintiff in her complaint filed August 16, 1982, her memoranda in support of the instant motion, and in her proposed amended complaint, as submitted to the court on February 25, 1983, the court is of the considered opinion that this plaintiff has failed entirely to state a cause of action under 42 U.S.C. § 1983 against any of the defendants named in the complaint.[1] While the court notes that the original motion to dismiss filed on November 15, 1982, (by defendants Conrad, Kneece, Wilson, Butler and Williams and later joined by defendants Trower, Smith and Scott), the second motion to dismiss filed November 16, 1982, (by defendants Moore, Neal, Morris, Andrews, Sumter, Alexander, Burnette and later joined by defendant Dowdy) and the third motion to dismiss filed on January 13, 1983, (by defendant Locklair) were never joined by defendants Williams and Jones, the court is constrained to conclude that the complaint fails also to state a claim against these two latter defendants.[2] As set forth in 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1973), "Even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim."

In response to the various motions to dismiss filed in late 1982 and early 1983 by the defendants herein, the court heard oral argument on February 25, 1983. On March 4, 1983, the court issued its ruling wherein the plaintiff's claim was dismissed in its entirety against the Commissioner of the South Carolina Department of Social Services, the members of the State Board of the Department of Social Services, and Barbara Locklair, such dismissal being based on the applicability of eleventh amendment immunity afforded to the states under the United States Constitution and the doctrine of "qualified immunity."[3] The complaint was also dismissed against the members of the Richland County Board of the Department of Social Services sued in their individual capacities under the doctrine of "qualified immunity." The plaintiff's pendent state claim under the South Carolina Wrongful Death Act, §§ 15–51–10, 15–51–20 and 15–51–40 of the Code of Laws of South Carolina 1976, as amended, was dismissed on the basis of South Carolina's doctrine of sovereign immunity. *See also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

As it remained, the plaintiff's complaint of August 16, 1982, asserted causes of action under 42 U.S.C. §§ 1983 and 1988 against the members of the Richland County Board sued in their official capacities and against defendants Mary Williams and Patricia Jones, sued both officially and individually, inasmuch as they had filed no motions to dismiss. By way of reiteration, the court now is of the opinion that not only were the above named defendants properly dismissed for the reasons set forth in the court's order of March 4, 1983, but that all defendants named in the plaintiff's complaint are entitled to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## DISCUSSION

The plaintiff, Karole K. Jensen, has attempted to assert a cause of action

---

**1.** The dismissal of the plaintiff's action under 42 U.S.C. § 1983 will, of course, result in a dismissal of her claim for attorney's fees pursuant to 42 U.S.C. § 1988 since she is not entitled to such fees until she has "prevailed on the merits of at least some of [her] claims." *Hanrahan v. Hampton,* 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980).

**2.** The court also notes that as of June 28, 1983, the date of oral argument on the instant mo-

tion, the defendant Patricia Jones had not been served with a summons and complaint in this action. A motion to dismiss pursuant to Rule 41(b) and Proposed Rule 4(j) was filed on her behalf on March 11, 1983. However, because the court is of the opinion that the action should be dismissed as to all parties, Ms. Jones' motion need not be reached.

**3.** *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

under 42 U.S.C. § 1983 against the above named officials for the wrongful death of her decedent, Sylvia R. Brown, a minor child who was the victim of parental child abuse. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any *rights, privileges* or *immunities* secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (emphasis added).

As set forth by the United States Supreme Court, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States." *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), *quoting Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Section 1983 is a remedial statute *only*, (emphasis added). It provides remedy only, and the substantive right must be found in the Constitution and laws. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). In 1980, the U.S. Supreme Court held that the phrase "secured by the Constitution and Laws" includes federal statutory law as well as the Constitution. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The plaintiff herein contends that her deceased was deprived of her fourteenth amendment "right to life" and of rights secured under 42 U.S.C. § 5101 *et seq.*, The Child Abuse Prevention and Treatment Act of 1974, and 42 U.S.C. § 620 et seq. (Part B of Title IV of the Social Security Act).[4]

4. The plaintiff does not specifically assert either of the above cited statutes in her complaint or proposed amended complaint. However, since she does allege in her original complaint that the action is brought pursuant to

## FOURTEENTH AMENDMENT

Turning first to the plaintiff's constitutional claim: the plaintiff contends that (1) the failure of the Commissioner and the State and County Boards of the South Carolina Department of Social Services to promulgate guidelines for social workers dealing with abused children and to adequately train and supervise such social workers and (2) the failure of the social workers themselves to adequately protect the infant Sylvia R. Brown, deprived her decedent of her fourteenth amendment right not to be deprived of life without due process of law. Complaint at ¶¶ 8 and 19. "Although the right to life is obviously an interest of constitutional dimension, its deprivation alone—cannot give rise to a claim under section 1983." *Dollar v. Haralson County, Ga.*, 704 F.2d 1540 (11th Cir.1983).

The fourteenth amendment to the United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall *any state* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. (emphasis added).

Since the amendment is directed to the states, it can be violated *only* by conduct that may be fairly characterized as *state action*. (emphasis added). *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). As the Supreme Court asserted in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974):

> In 1883, this Court in the *Civil Rights Cases*, 109 U.S. 3 [3 S.Ct. 18, 27 L.Ed. 835], affirmed the essential dichotomy set forth in [the Fourteenth] Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct, 'however discriminatory or

"the constitution and laws" of the United States and does address the specific statutes in her present motion before the court, the court will fully discuss the applicability of these statutes *infra*.

wrongful,' against which the Fourteenth Amendment offers no shield.

In 1982, the United States Supreme Court reaffirmed this essential dichotomy between "state action" and private conduct in the cases of *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). In *Lugar* the court set forth:

Careful adherence to the "state action" requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. *It also avoids imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.* A major consequence is to require the courts to respect the limits of their own power as directed against state governments and private interests. Whether this is good or bad policy, it is a fundamental fact of our political order. (emphasis added). 102 S.Ct. at 2754.

Gary C. Leeds, professor of law at the T.C. Williams School of Law of the University of Richmond, explored in great detail the development of the doctrine of "state action" and the limitation it imposes on federal courts in the North Carolina Law Review article entitled, *State Action Limitations on Courts and Congressional Power.* 60 N.C.L.Rev. 747 (1982). In the article, Professor Leeds sets forth an admonition which, in the court's opinion, has particular application to the case at hand:

Because of the state action doctrine, courts cannot reach most abridgments of liberties by individuals. This limitation, however unjust on occasion, is consistent with several vital principles in our system of government that should not be lightly disregarded in order to achieve a particular "good" result in a hard case. *Id.* at 752.

Karole K. Jensen, the plaintiff herein, presents to the court an emotionally compelling argument; child abuse is a most noxious social evil that demands serious consideration and concerted action to stem its widespread existence. However, it has been of great concern to this court since the inception of the instant case that plaintiff's decedent, Sylvia Brown, was deprived of her life by *her parent, a private individual.* (emphasis added). As the Supreme Court has repeatedly held, purely private discriminatory conduct, although wrongful and reprehensible, is not prohibited by the fourteenth amendment. *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). While the court observes that there was some state involvement with the plaintiff's decedent prior to her death in May of 1979, the finding of some incidental state action is not the end of the inquiry. The crucial judicial inquiry is whether the state and thereby, its officials, should be held responsible, whether the alleged infringement of the plaintiff's decedent's federal right by her parent is "fairly attributable to the state." *Lugar,* 102 S.Ct. at 2754. *See also Peterson v. City of Greenville,* 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963).

At the outset of the court's inquiry, the court notes that Judge William W. Wilkins of this district held in the case of *Karole K. Jensen, as Administratrix of the Estate of Michael Clark v. Conrad, et al.,* 570 F.Supp. 114 (D.S.C.1983), that the due process clause of the fourteenth amendment constituted an appropriate federal basis for a suit brought under 42 U.S.C. § 1983 by the plaintiff herein in the Anderson division. Although the factual setting in *Clark* differed substantially from the case at hand, the plaintiff's theory of liability was virtually identical to that asserted herein. Although Judge Wilkins found the necessary "state action" to support a fourteenth amendment violation, this court is not absolutely bound by his determination in *Clark.* While this court might find his opinion highly persuasive on the issue, "a District Court decision which has not stood the acid test of appellate review cannot be regarded as authoritative, much less dispositive...." *Bank of Marin v. England,* 352 F.2d 186,

189, n. 1 (9th Cir.1965), *reversed on other grounds,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

Cases involving "state action" analysis arise from a variety of factual backgrounds. However, the instant case is "obviously different from those cases in which the defendant is a private party and the question is whether his conduct has sufficiently received the imprimatur of the state so as to make it 'state' action for the purposes of the Fourteenth Amendment." [cites omitted]. *Blum v. Yaretsky,* 102 S.Ct. at 2785. This case also differs from "state action" cases in which state officials enforced state laws and regulations, for example, garnishment or attachment statutes, at the behest of a private individual. "[I]n such cases the question typically is whether the private motives which triggered the enforcement of those laws can fairly be attributed to the State." [cites omitted]. *Id.* Here, the plaintiff Karole K. Jensen, as did the plaintiffs in *Blum,* seeks to hold state officials liable for the action of a private party, Sylvia R. Brown's mother.

In *Blum,* a class of Medicaid patients who were residents of a private New York nursing home brought an action alleging that they had not been afforded adequate notice of decisions made by nursing home officials to transfer them to lower level care facilities or notice of their right to an administrative hearing to challenge those decisions. The plaintiffs asserted that these omissions were in violation of their fourteenth amendment right of due process. The state of New York subsidized the costs of the private facility, paid the expenses of patients, licensed the facility and required extensive reporting of all transfer decisions. Additionally, when the patients were transferred to lower level care facilities, the state correspondingly reduced their Medicaid benefits. Despite this substantial state involvement, the Court refused to find the requisite "state action" necessary to hold the state defendants liable for the transfer decisions and thus, for a fourteenth amendment violation. *Id.* 102 S.Ct. at 2790.

In so holding, the Supreme Court in *Blum* outlined three important points with respect to the essential "state action" analysis required when a party asserts a fourteenth amendment violation. First, the Court noted:

> [A]lthough it is apparent that nursing homes in New York are extensively regulated, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson v. Metropolitan Edison Co., supra.* 419 U.S. at 350, 95 S.Ct., at 453. The complaining party must also show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.,* at 351, 95 S.Ct., at 453. The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains. The importance of this assurance is evident when, as in this case, the complaining party seeks to hold the State liable for the actions of private parties. (emphasis in the original). *Blum v. Yaretsky,* 102 S.Ct. at 2786.

The Court next asserted an important principle which is specifically applicable to, if not controlling in, the case at hand:

> [A]lthough the factual setting of each case will be significant, our precedents indicate that *a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.* [cites omitted]. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment. [cites omitted], (emphasis added). *Id.* 102 S.Ct. at 2786.

The third point noted by the Court in *Blum* has no application to the case at hand for it could hardly be said that the private entity herein has exercised powers that are "traditionally the exclusive prerogative of the State." *Blum* citing, *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 353, 95 S.Ct., at 454; *see Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 157–161, 98 S.Ct. 1729, 1733–36, 56 L.Ed.2d 185 (1978). Cases under this line of analysis generally fall within what is commonly known as the "public function doctrine"; private entities performing functions traditionally performed by government. *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

 In applying the *Blum* analysis to the case at hand, the plaintiff would assert that the state and county officials' responsibility for her decedent's death arises from the duties imposed by South Carolina statutory law, found at §§ 20–7–640 and 20–7–650 of the South Carolina Code of Laws 1976, as amended.[5] Section 20–7–640 outlines the duties of the State Department of Social Services and § 20–7–650 details the duties of the local child protective agency, here, the Richland County Board of the Department of Social Services. As previously set forth in this court's order of March 4, 1983, §§ 20–7–640 and 20–7–650 outline the general responsibilities of the state department and the local agency with respect to reporting and referral of cases of child abuse, the promulgation of programs, the facilitation of research in the area, and the training of their investigative personnel. The more specific duties imposed by these sections are found in § 20–7–650 wherein the local agency is charged with investigating a report of suspected abuse or neglect within twenty-four hours of its receipt and with making its findings with respect to such reported abuse within sixty days. § 20–7–650(C). The agency is required to communicate cases of indicated abuse to the Statewide Central Registry,

§ 20–7–650(E), and in such cases of indicated abuse, the agency is charged in subsection (G) with, ". . . providing, directing or coordinating the appropriate and timely delivery of services to children found to be abused or neglected and those responsible for their care or others exercising temporary or permanent control over such children . . . ." Additionally, if such protective services are initiated, the agency is required to notify the Family Court of the jurisdiction for the purpose of scheduling a hearing as to the reasonableness of such offered services. § 20–7–650(H).

The court acknowledges that these statutes impose certain duties upon the state and local agencies with regard to the investigation of child abuse and the subsequent provision of services. However, the court is not convinced that these statutes amount to "regulation" of the conduct of a parent abuser or coercion or significant encouragement of his or her conduct so as to provide the required "state action" under the fourteenth amendment. As set forth previously, "state action" is an essential preliminary condition to § 1983 jurisdiction, and failure to find "state action" will require dismissal of the case. *Martinez v. California,* 444 U.S. 277, 283–85, 100 S.Ct. 553, 558–59, 62 L.Ed.2d 481, 488–89 (1980) and *Hall v. Quillen,* 631 F.2d 1154 (4th Cir.1980).

Clearly, these statutes do not "regulate" private individuals within the scope of the analysis set forth by the Supreme Court in *Jackson v. Metropolitan Edison Co., supra,* or *Blum v. Yaretsky, supra.* Indeed, the court is instructed by the Supreme Court instead to focus upon whether, by virtue of §§ 20–7–640 and 20–7–650 and the duties imposed therein, the state agency, the local agency or the social workers themselves have, ". . . exercised coercive power or [have] provided such significant encouragement, either overt or covert, that the choice [of the decedent's parent] must in law be

**5.** The plaintiff has never, by memorandum, through oral argument or otherwise, *specifically* asserted her theory of "state action" on which she bases her claim of a fourteenth amendment violation. Therefore, the court

must proceed, in an admittedly speculative fashion, to apply the "state action" analysis set forth by the United States Supreme Court to the situation at hand.

deemed to be that of the State." *Blum v. Yaretsky,* 102 S.Ct. at 2786. It would indeed be ludicrous to suggest that the state or any of its officials coerced or encouraged, in any respect, the abuse and subsequent killing of plaintiff's decedent. The statutes and the very existence of the state and local agencies are directed toward the protection of such children. Subsection (A) of § 20–7–650 provides: "It is the purpose of this section to *encourage the voluntary acceptance of any service offered by the child protective service agency in connection with child abuse and neglect,* or any other problem of a nature affecting the stability of family life." (emphasis added).

The court understands that part of the plaintiff's claim rests upon a claim of inaction or insufficient action by the defendants herein; that the defendants simply failed to adequately protect the decedent, Sylvia R. Brown, from her abusive parents. The plaintiff, as did Judge Wilkins in his previously mentioned order of June 16, 1983, relies heavily on the case of *Doe v. New York City Department of Social Services,* 649 F.2d 134 (2d Cir.1981). The Second Circuit in *Doe* did not address the issue of "state action" under the fourteenth amendment, but in this court's mind there are two crucial distinctions between *Doe* and the case at hand for purposes of "state action" analysis. In *Doe,* as in *Blum,* the private entity (the foster home and thereby, the foster father, in *Doe* and the private nursing home in *Blum*) was subject to direct state regulation.[6] Both were state licensed private entities. While the Court in *Blum* noted that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment," quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. at 350, 95 S.Ct. at 453, the close and continuing supervisory relationship between the state agency and the foster father in *Doe* would probably satisfy "state action" analysis under *Blum* and *Jackson.*

In the instant case, the court is of the opinion that there is not a sufficiently close nexus between the state of South Carolina and Sylvia Brown's mother so that the action of the latter may be fairly treated as that of the state. *Blum,* 102 S.Ct. at 2786. While the state may offer "services" to an abusive parent, the parent is in no sense under the obligatory control of the state and is not even required to accept such "services" as the agencies may offer. As set forth in § 20–7–650(J) of the South Carolina Code of Laws 1976, as amended:

> If at any time after the initiation of protective services by the agency *those receiving services indicate a refusal to cooperate, the agency shall withdraw.* If the facts so warrant, the agency may petition the Family Court to invoke the jurisdiction of the court under the Family Court Act to intervene, but in no case shall the agency threaten such action to coerce participation. (emphasis added).

Absent intervention by the Family Court of the jurisdiction, the parent of an abused child may accept or reject, at his or her own will, the offered guidance of the state. This court is unwilling to convert non-obligatory state supervision or guidance into "regulation" in order to hold the state responsible for the acts of Sylvia R. Brown's mother under the fourteenth amendment. *Blum,* 102 S.Ct. at 2786. To stretch the concept of "state action" so far would, in essence, require a finding of "state action" in every instance of state involvement with a private individual.

The second and very important distinction between the case at hand and the *Doe* case is the fact that the child in *Doe* was in the *legal* custody of the state of New York. (emphasis added). Sylvia R. Brown was in no respect in the custody of the state of South Carolina. The agency had not, to this court's knowledge, even initiated pro-

---

**6.** "As a placement agency, [the New York City Department of Social Services] was charged by state law with the task of periodically inspecting and annually recertifying the Senerchia home. (New York Social Services Law §§ 376, 378) (McKinney). Its alleged failure to perform this duty is the gravamen of plaintiff's complaint." *Doe,* 649 F.2d at 137.

ceedings under § 20–7–736, which provides the Family Court of a particular jurisdiction with the power to remove a child from its parent's custody *only* upon a showing by clear and convincing evidence that the child cannot be protected from further harm without being so removed.

Legal custody is a parental right that is not to be lightly disregarded:

> It is a right protected both by the common law and by statute. Since the right of parents to the custody of their minor children is both a natural and a legal right, the law should not disturb the parent-child relationship except for the strongest reasons, and only upon a clear showing of a parent's gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child. 59 Am.Jur.2d *Parent and Child* § 25 (1971).

However, once that right is legally forfeited and the state assumes custody, the state then is charged with "affirmative duties, the non-feasance of which may violate the constitution." *Doe,* 649 F.2d at 141. This court is of the opinion that while the state and county officials may have been under a legal duty to offer protective services to the custodians of abused children, absent legal custody of a child by the state, the officials had no general duty to unequivocally ensure the safety of that child twenty-four hours a day. As stressed by the Eleventh Circuit in *Dollar v. Haralson County, Ga.,* 704 F.2d 1540 (11th Cir. 1983):

> In determining whether a constitutional deprivation has occurred, courts must examine *whether the defendant was under any obligation to the particular plaintiff.* The question of the existence of such a duty is an issue of law. The court, not the jury, must determine "whether, upon the facts in evidence, [a duty] exists between the parties that the community will impose a legal obligation upon one for the benefit of the other." W. Prosser Handbook of the Law of Torts 206 (1971). The duty focuses upon the *relationship.* (emphasis added). *Id.* at 1543.

The relationship between these officials and the plaintiff's decedent was legally insufficient to impose upon them the legal obligation of, in essence, becoming the absolute insurers of Sylvia R. Brown's safety. The duties of the defendants in this situation were to conduct an investigation and offer their services to the decedent's legal custodian. If they performed these duties negligently, that is a matter of state tort law. Therefore, the court is of the opinion that legal custody and/or direct supervisory control over or regulation of the parent or caretaker are necessary prerequisites to a finding of "state action," for the purposes of the fourteenth amendment, in the instant case. As set forth by the Seventh Circuit Court of Appeals in the 1982 case of *Bowers v. DeVito, et al.,* 686 F.2d 616 (1982):

> There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law. *Brazier v. Cherry,* 293 F.2d 401, 404–05 (5th Cir.1961). But there is no constitutional right to be protected by the state against being murdered by criminals or madmen. *It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment, or, we suppose, any other provision of the Constitution.* The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order. (emphasis added). *Id.* at 618.

The plaintiff's decedent's right to life was protected by the fourteenth amendment, but it only protected her from deprivation by the "State ... of life ... without due process of law." Although the state's offer of protective services was action by the state, the deprivation of the decedent's life cannot be fairly characterized as "state action." Regardless of whether, as a matter

of state tort law, the state and local boards of the Department of Social Services, the commissioner, Barbara Locklair and the social workers, Williams and Jones, could be said to have had a "duty" to avoid harm to the infant or to have proximately caused her death, the court does hereby find that the defendants did not "deprive" the plaintiff's decedent of life within the meaning of the fourteenth amendment. *Martinez v. State of California,* 100 S.Ct. at 559. For the foregoing reasons, the court concludes that the plaintiff has failed to state a constitutional claim for which relief may be afforded under 42 U.S.C. § 1983, as against all defendants.

STATUTORY CLAIM

The plaintiff next contends that her decedent was deprived of "rights" secured under the Child Abuse Prevention and Treatment Act of 1974, codified at 42 U.S.C. § 5101 *et seq.,* and Part B of Title IV of the Social Security Act, 42 U.S.C. § 620 *et seq.* In 1980, the United States Supreme Court construed 42 U.S.C. § 1983 as authorizing suits to redress violations by state officials of *rights* (emphasis added) created by federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *see also Middlesex County Sewerage Authority, et al. v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

However, in order to assert a cause of action under 42 U.S.C. § 1983 for the violation of a federal statute, that statute must create a "right, privilege or immunity" within the meaning of § 1983. The issue in the instant case then becomes: did the plaintiff's decedent have any "rights" secured by the Child Abuse Prevention and Treatment Act of 1974 or Part B of Title IV of the Social Security Act. *Thiboutot* only grants the plaintiff a cause of action under § 1983 if the statutes afforded her decedent a substantive "right."

The statutes cited by the plaintiff deal with the appropriation of federal funds to states for child welfare services, 42 U.S.C. § 620 *et seq.,* and more specifically, for services directed toward the prevention of child abuse, 42 U.S.C. § 5101 *et seq.* Section 5103 of the Child Abuse Prevention and Treatment Act provides in pertinent part:

(b) Grants to States; qualifications for assistance; reduction of awards; compliance of social security provisions with certain requirements

(1) The Secretary, through the Center, is authorized to make grants to the States for the *purpose of assisting the States in developing, strengthening, and carrying out child abuse and neglect prevention and treatment programs.*

(2) In order for a State to qualify for assistance under this subsection, such State shall—

(A) have in effect a State child abuse and neglect law which shall include provisions for immunity for persons reporting instances of child abuse and neglect from prosecution, under any State or local law, arising out of such reporting;

(B) provide for the reporting of known and suspected instances of child abuse and neglect;

(C) provide that upon receipt of a report of known or suspected instances of child abuse or neglect an investigation shall be initiated promptly to substantiate the accuracy of the report, and upon a finding of abuse or neglect, immediate steps shall be taken to protect the health and welfare of the abused or neglected child, as well as that of any other child under the same care who may be in danger of abuse or neglect;

(D) demonstrate that there are in effect throughout the State, in connection with the enforcement of child abuse and neglect laws and with the reporting of suspected instances of child abuse and neglect, such administrative procedures, such personnel trained in child abuse and neglect prevention and treatment, such training procedures, such institutional and other facilities (public and private), and such related multidisciplinary programs and

services as may be necessary or appropriate to assure that the State will deal effectively with child abuse and neglect cases in the State;

(E) provide for methods to preserve the confidentiality of all records in order to protect the rights of the child, his parents or guardians;

(F) provide for the cooperation of law enforcement officials, courts of competent jurisdiction, and appropriate State agencies providing human services;

(G) provide that in every case involving an abused or neglected child which results in a judicial proceeding a guardian ad litem shall be appointed to represent the child in such proceedings;

(H) provide that the aggregate of support for programs or projects related to child abuse and neglect assisted by State funds shall not be reduced below the level provided during fiscal year 1973, and set forth policies and procedures designed to assure that Federal funds made available under this subchapter for any fiscal year will be so used as to supplement and, to the extent practicable, increase the level of State funds which would, in the absence of Federal funds, be available for such programs and projects;

(I) provide for dissemination of information to the general public with respect to the problem of child abuse and neglect and the facilities and prevention and treatment methods available to combat instances of child abuse and neglect; and

(J) to the extent feasible, insure that parental organizations combating child abuse and neglect receive preferential treatment.

If a State has failed to obligate funds awarded under this subsection within eighteen months after the date of award, the next award under this subsection made after the expiration of such period shall be reduced by an amount equal to the amount of such unobligated funds unless the Secretary determines that ex-traordinary reasons justify the failure to so obligate.

3) Programs or projects related to child abuse and neglect assisted under part A or B or title IV of the Social Security Act shall comply with the requirements set forth in clauses (B), (C), (E), and (F) of paragraph (2). (emphasis added).

Part B of Title IV of the Social Security Act generally provides for the appropriation to the individual states of a designated sum of money each fiscal year, "For the purpose of enabling the United States, through the Secretary, to cooperate with State public welfare agencies in establishing, extending, and strengthening child-welfare services...." 42 U.S.C. § 620. "Child-welfare services" include "public social services which supplement, or substitute for, parental care and supervision for the purpose of (1) preventing or remedying, or assisting in the solution of problems which may result in, the neglect, abuse, exploitation, or delinquency of children, ..." 42 U.S.C. § 625.

These statutes do address by means of federal appropriations, the problem of child abuse and neglect in the individual states. However, the fact that abused children are the indirect recipients of federal largess does not, in and of itself, create enforceable "rights" in the statute itself. *Perry v. Housing Authority of the City of Charleston,* 664 F.2d 1210 (4th Cir.1981). The plaintiff has not directed the court to any substantive provision of the two acts which would have given her decedent a tangible right to be unqualifiedly protected from, or free from, abuse within the contemplation of § 1983.

The situation involved in this case is closely analogous to that in the recent Supreme Court decision of *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In *Pennhurst,* the Court held that the Developmentally Disabled Assistance and Bill of Rights Act of 1975 (42 U.S.C. § 6000 *et seq.,*) created no substantive rights to "appropriate treatment" in the "least restric-

tive" environment for mentally retarded persons. In so holding, the Court asserted:

> There is virtually no support for the lower court's conclusion that Congress created rights and obligations pursuant to its power to enforce the Fourteenth Amendment. The Act nowhere states that that is its purpose. *Quite the contrary, the Act's language and structure demonstrate that it is a mere federal-state funding statute.* (emphasis added).
>
> *Id.* 451 U.S. at 18, 101 S.Ct. at 1540, 67 L.Ed. at 708.

The Fourth Circuit had the opportunity to apply the Supreme Court's *Pennhurst* ruling in the 1981 case of *Perry v. Housing Authority of Charleston,* 664 F.2d 1210 (4th Cir.1981). In *Perry,* the court concluded that the United States Housing Act of 1937 did not create any legally cognizable "rights" in tenants of programs funded under the housing statutes and consequently, disallowed any action under 42 U.S.C. § 1983.

A thorough review of the language, structure and legislative histories of both the Child Abuse Prevention and Treatment Act of 1974 and Part B of Title IV of the Social Security Act reveal that they too are but mere federal-state funding statutes. Indeed, the first sentence of the legislative history of the Child Abuse Prevention Act reads:

> The Committee on Education and Labor, to whom was referred the bill (S. 1191) *to provide financial assistance for a demonstration program for the prevention, identification, and treatment of child abuse and neglect, to establish a National Center on Child Abuse and Neglect,* and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass. (emphasis added). 1974 U.S.Code Congressional and Administrative News, p. 2763.

The federal statutes cited by the plaintiff in her memorandum in support of her motion afforded her decedent no "rights, privileges, or immunities" within the meaning of 42 U.S.C. § 1983. *Middlesex, supra; Pennhurst, supra* and *Perry, supra.* As set forth previously, 42 U.S.C. § 1983 itself creates no substantive rights, such "rights," if any exist, must be found in the Constitution and laws of the United States. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979).

The plaintiff also bases her statutory claim in part on regulations under Part B of Title IV of the Social Security Act. However, since the regulations were promulgated under the statute, they cannot exceed its substantive scope and create an enforceable right when the court has determined that the statute itself creates no such "right." *Dopico v. Goldschmidt,* 518 F.Supp. 1161 (S.D.N.Y.1981).

Therefore, the court concludes that the plaintiff has also failed to assert a cognizable claim against any of the defendants named herein under 42 U.S.C. § 1983 for a violation of a "right secured by the laws of the United States."

## CONCLUSION

The court has considered, in great detail, the claims asserted by the plaintiff, Karole K. Jensen in her motion to reconsider/amend as filed March 14, 1983. Additionally, the court has thoroughly reviewed the plaintiff's proposed amended complaint, as submitted to the court on February 25, 1983. The plaintiff's proposed amended complaint sets forth more completely the facts surrounding her decedent's death. However, it does not alter the legal theories upon which she proceeds.[7] Nonetheless, the additional facts asserted in the proposed amended complaint do not alter this court's opinion with regard to the existence of "state action" in this case or as they would

---

7. The plaintiff did assert an eighth amendment claim in her proposed amended complaint. However, at oral argument held June 28, 1983, the plaintiff's counsel candidly and correctly acknowledged that the factual situation presented herein could not support a claimed eighth amendment violation within the meaning of 42 U.S.C. § 1983.

apply to any claimed statutory infringement. Therefore, the court does hereby deny the plaintiff's motion to amend the complaint.

With regard to the plaintiff's motion to alter or amend its "judgment" of March 4, 1983, the court notes that today's ruling was perhaps foreshadowed by the court in its March 4, 1983, order wherein it was stated:

> It can hardly be said that in May of 1979 the law "clearly established" that an action for civil liability premised under the Fourteenth Amendment would lie against a state or county department of social services board member or home health care nurse for the failure to adequately train or supervise social workers dealing with abusive parent(s) *when this court is not convinced in March of 1983 that such a cause of action exists.* (emphasis added). Order of March 4, 1983 at 20.

For the foregoing reasons and based on the cited authorities, the court concludes that the plaintiff has failed to assert either a constitutionally or statutorily protected "right" within the meaning of 42 U.S.C. § 1983. The court adheres to its ruling of March 4, 1983, in that the parties were properly dismissed for the reasons set forth therein. However, the court is now of the opinion that all parties to this action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the plaintiff's failure to assert a claim upon which relief may be granted.

IT IS THEREFORE ORDERED that plaintiff's motion to alter or amend judgment and to amend the complaint is hereby denied.

IT IS FURTHER ORDERED that the complaint be, and the same hereby is, dismissed as to all defendants named herein pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.