672 F.2d 403
 Naomi B. HUGHES, Administratrix of the Estate of Stanley
Wayne Hughes, Deceased, Appellant,
v.
Walter D. BLANKENSHIP, Kenneth Madden, Sgt. Arthur T.
Christianson, and Lt. Arlington County Police
David T. Reiten, Appellees,
and
County of Fairfax, Virginia, County of Arlington, Virginia,
County of Fairfax Board of Supervisors, County of Arlington
Board of Supervisors, Fairfax County Police Department,
Arlington County Police Department, Richard A. King, Police
Chief of Fairfax County, William Stover, Police Chief of
Arlington County, John Doe, John Doe, Defendants.
 No. 80-1427.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 3, 1981.
Decided March 3, 1982.
 
 Nina J. Ginsberg, William B. Moffitt, Alexandria, Va. (Mark & Moffitt, P.C., Alexandria, Va., on brief), for appellant.
 Jack L. Gould, Fairfax, Va. (Odin, Feldman & Pittleman, P.C., Fairfax, Va., Paul F. Sheridan, Siciliano, Ellis, Sheridan & Dyer, Arlington, Va., on brief), for appellees.
 Before WIDENER, PHILLIPS and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 Naomi B. Hughes, administratrix, appeals from the judgment of the district court, entered after a jury trial, that police officers Walter D. Blankenship, Kenneth Madden, Arthur T. Christianson and David T. Reiten were not liable under 42 U.S.C. § 1983 for the shooting death of her son. The Counties of Fairfax and Arlington, their Boards of Supervisors, Police Departments and police chiefs originally also were named as defendants, but were voluntarily dismissed by Hughes. The above named officers were retained as defendants individually and "in their official capacities." Since the police officers are not liable in their official capacities and since the qualified immunity which shields them individually is not pierced by simple negligence, the judgment of the district court is affirmed.
 
 
 2
 The tragic death of Mrs. Hughes' son was the culmination of a police investigation of Kenneth King, who was sought in connection with a malicious wounding in Arlington County, Virginia, and a homicide in Alexandria, Virginia. At approximately 11:00 p. m. on the evening involved, the Arlington County police received a tip that King, who was believed to be armed, dangerous and potentially suicidal, was staying with a woman known as "Naomi" at an apartment complex in Fairfax County. Acting on this tip and other information, Sergeant Christianson, Lieutenant Reiten and District Supervisor Madden of the Arlington County police, as well as Sergeant Blankenship and Corporal LeMaster of the Fairfax County Police, proceeded to the apartment building, where they were joined by officer Judith Ludkins, also of the Fairfax County Police.
 
 
 3
 Sergeant Christianson contacted "Naomi," who proved to be the appellant, Naomi B. Hughes, by telephone, while the other police officers surrounded the apartment building. Officers Madden and Blankenship were stationed in the hallway outside Mrs. Hughes' apartment, while officers LeMaster and Reiten were at the rear of the apartment complex.
 
 
 4
 Mrs. Hughes, who was aware that King was sought by the police, spoke twice with Sergeant Christianson by telephone. The first conversation was quite brief; during the second call Mrs. Hughes stated that King had been at her apartment, but that he had departed four hours earlier. Mrs. Hughes told Sergeant Christianson that only she and her son were in the apartment, but in reality King also was present. Christianson advised the other officers of the conversation with Mrs. Hughes, and instructed her to open the apartment door for them. When she failed to act, officers Madden and Blankenship announced their presence and ordered her to open the door. Blankenship positioned himself, with his revolver drawn, in the recessed door of the apartment adjacent to Mrs. Hughes', while Madden, also with revolver drawn, was positioned on a downstairs landing. The officers heard a shot fired inside the apartment, the apartment door then slammed open and Mrs. Hughes emerged, screaming hysterically and followed closely by a black man, whom the officers assumed to be King.
 
 
 5
 Neither Blankenship nor Madden could see the man's left hand, and Blankenship, believing Mrs. Hughes' life to be in danger, fired at him. Madden, who saw Blankenship recoil and believed that he had been shot, also fired. The officers thus shot and killed Mrs. Hughes' 21 year old son Stanley. King also was found dead, in Mrs. Hughes' bedroom, from a self-inflicted gunshot wound.
 
 
 6
 The appellant contends that qualified good faith immunity from liability under 42 U.S.C. § 1983 is not extended to public officers sued in their official capacities and that the appellees thus are necessarily liable for the death of Stanley Hughes, even if it resulted from an act of simple negligence. While we accept the appellant's premise that good faith immunity insulates these defendants only from liability in their individual capacities, we cannot agree that a determination of liability in their official capacities necessarily follows. Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent, Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity itself. Monell, supra; Familias Unidas v. Briscoe, 619 F.2d 391 (5th Cir. 1980). A local governmental entity is not liable, under a theory of respondeat superior, for injury inflicted solely by its agents or employees. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, at 694, 98 S.Ct. at 2037.
 
 
 7
 The plaintiff presented no evidence of any official government policy or custom which might have governed the actions of the police officers. Neither Arlington nor Fairfax County has a detailed policy governing the use of force in police emergencies. Rather, the use of force is left to the judgment of individual officers, subject only to the general directive that they fire their weapons as a last resort. The defendants responded to a routine call and used force to defend themselves and Mrs. Hughes in what was perceived to be a life-threatening situation. So far as the record indicates, the shooting was an isolated incident. Since, therefore, the injury occurring in this case did not arise from the execution of governmental policy or custom, the defendants cannot be liable in their official capacities.
 
 
 8
 Police officers sued in their individual capacities, of course, have qualified immunity from personal liability for damages with respect to official actions taken in good faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Individual liability for actions taken in the performance of official duties arises only when an officer "knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the ... (individuals) affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury...." Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The first prong of the Wood standard is not at issue in this case. The second prong requires malicious intent to harm. While that intent can be established by proving actions demonstrating deliberate indifference to constitutional rights, simple negligence is not sufficient to thus deprive an official defendant of his qualified immunity. Procunier v. Navarette, 434 U.S. 555, 566, 98 S.Ct. 855, 862, 55 L.Ed.2d 24 (1978). The court's instruction that the jury could not find liability in the absence of gross negligence, therefore, was not in error.
 
 
 9
 The question of whether the actions of the police officers which resulted in Stanley Hughes' death were simple negligence or manifested such deliberate indifference as to negate good faith was a question of fact appropriately presented to the jury which resolved it in favor of the defendants.
 
 
 10
 The judgment of the district court is, therefore, affirmed.
 
 
 11
 AFFIRMED.