### David M. WILLIAMS, etc.

#### v.

### Lloyd A. ANDERSON, etc., et al.

### David M. WILLIAMS

#### v.

### TALBOT COUNTY, MARYLAND, et al.

#### Civ. Nos. K–85–1646, K–85–3088.

United States District Court,
D. Maryland.

Dec. 26, 1990.

---

David M. Williams, pro se.

J. Joseph Curran, Jr., Atty. Gen. of Md., and Steven D. Keller, Asst. Atty. Gen. of Md., Baltimore, Md., for defendants Anderson and Kent County Dept. of Social Services.

David R. Thompson and Earnest & Cowdrey, P.A., Easton, Md., for Talbot County and Chesapeake Publ. Corp.

George C. Nier, Denton, Md., for Caroline County.

Robert V. Jones, Elkton, Md., for Cecil County.

Patrick E. Thompson, Centreville, Md., for Queen Anne's County.

J. Joseph Curran, Jr., Atty. Gen. of Md., and James G. Klair, Asst. Atty. Gen. of Md., Baltimore, Md., for Bodine and Foster.

Alvin I. Frederick and Eccleston and Wolf, Baltimore, Md., for Hairston.

Michael T. Soberick, Gloucester County Atty., Gloucester, Va., and William J. Jack-

son and Semmes, Bowen and Semmes, Baltimore, Md., for Baker.

Joan Turner, pro se.

FRANK A. KAUFMAN, Senior District Judge.

Plaintiff David Williams,[1] proceeding *pro se*, instituted the within cases on April 16, 1985 and July 22, 1985, seeking injunctive and monetary relief against numerous defendants[2] (a) for various alleged violations of constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, and (b) asserting pendent jurisdiction for tortious conduct under Maryland law arising out of a state court child custody case and various related events. Jurisdiction is premised on 28 U.S.C. §§ 1343 and 1332 and on the pendent jurisdiction of this Court.

In these two cases, Williams contends that defendants, individually and as co-conspirators, deprived him of the custody of his daughter pursuant to a policy favoring the mother in custody cases, or as retribution for his past representations of clients in matters adverse to defendants' interest. In addition, Williams asserts that he has been defamed on a number of occasions by several of the defendants.

On December 18, 1985, this Court filed a Memorandum and Order staying further proceedings in these cases pending resolution of the state child custody proceedings in *Turner v. Williams*, Equity No. 6201, and the state civil action in *Williams v. Anderson*, Case No. CV0129, both in the Circuit Court for Talbot County, Maryland.[3] On March 31, 1988, this Court lifted that stay as to the judicial defendants and entered summary judgment in favor of them, *i.e.*, defendants North, Rasin, Carter, Cole and Wise. *See Williams v. North*, 685 F.Supp. 502 (D.Md.1988). On January 10, 1990, plaintiff moved to lift the stay imposed by this Court as to the remaining defendants; the majority of defendants responding to that motion have stated that they have no objection to this Court lifting the stay and ruling on the outstanding motions pending before it. Under the circumstances, the stay imposed by this Court's aforementioned December 18, 1985 Memorandum and Order is hereby lifted, and this Court will herein rule with respect to certain of the motions now pending before it.[4]

## I. FACTS

The following factual overview attempts to summarize, as accurately as possible, Williams' 131–page amended complaint and the affidavits and other materials submitted by the parties. In 1978, Williams was initially awarded custody of his daughter in *Turner v. Williams*, Equity No. 6201 (Circuit Court for Talbot County, Md.). However, on September 14, 1984, the Cir-

---

**1.** In Civil No. K–85–1646, plaintiff Williams sues in his individual capacity and as guardian and next friend of Alice Loraine Williams, infant. In Civil No. K–85–3088, plaintiff Williams sues in his individual capacity only.

**2.** Defendants in Civil No. K–85–1646 are Lloyd Anderson, Director of the Kent County, Maryland Department of Social Services (DSSKC), and the DSSKC agency itself. Plaintiff has filed a motion to add, as a party defendant, Paula Gish, a social worker at the DSSKC. Defendants have opposed the addition of such defendant until this Court rules on their outstanding motions for summary judgment. In the light of the within opinion, plaintiff may file an amended complaint adding such new defendant, provided plaintiff so does on or before January 14, 1991.

The defendants remaining in Civil No. K–85–3088, after a prior decision of this Court, are Joan Turner, Williams' former wife; Waller Hairston, Ms. Turner's attorney; Phillip Foster,

the court-appointed attorney for Williams' daughter; Jennifer Bodine, law clerk to Judge John C. North of the Circuit Court for Talbot County; Jeri Baker, a social worker; Chesapeake Publishing Corporation, a newspaper publisher; and the Maryland counties—Queen Anne's, Talbot, Cecil, and Caroline—in which four of the now-dismissed defendant judges sit. Motions filed by some of those defendants are not reached in this opinion and will be the subject of a subsequent opinion of this Court. *See* page 1315, *infra*.

**3.** In an Opinion dated February 26, 1986, this Court denied plaintiff's motion for a temporary retraining order or for a preliminary injunction on the basis of abstention principles set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). *Williams v. North*, 638 F.Supp. 457, 463 (D.Md. 1986).

**4.** *See* note 2, *supra*.

cuit Court for Talbot County, Judge North presiding, awarded temporary custody of the child to her mother, defendant Turner herein, permitting Turner to keep the child at her residence in Gloucester, Virginia. In her application for temporary custody, Turner alleged that Williams had physically abused the child on one or more occasions. On October 25, 1984, Williams petitioned the Circuit Court for Talbot County to permit him to regain custody of the child. In the course of denying that petition, Judge Rasin, sitting in the Circuit Court for Talbot County, ordered the child committed to a psychiatric institution for evaluation. The child was thereafter evaluated by that psychiatric institution and then returned to the custody of Ms. Turner. On January 18, 1985, in response to a further petition by Williams to regain custody, Judge North ordered the child placed in the temporary custody of the Department of Social Services of Kent County, Maryland (DSSKC) and directed DSSKC to place the child in a suitable foster home from which she could attend a school in Chestertown, Maryland. Williams' appeal of that order to an *en banc* panel of Maryland's Second Judicial Circuit was denied. Williams also appealed an allegedly *ex parte* order by Judge North dated February 11, 1984 in which Judge North apparently transferred custody of the child to Ms. Turner. The same *en banc* panel of the Second Judicial Circuit reversed that February 11, 1984 decision by Judge North and reinstated Judge North's earlier order which had, as aforesaid, placed the child in the custody of the DSSKC. In August of 1985, Judge North ordered the child placed in a boarding school in Pennsylvania, and on February 27, 1986, Judge North also ordered Williams, Turner and the child to undergo psychological evaluations. After those evaluations were submitted, Judge North followed the recommendations of psychologists Alice Dvoskin and Jonas Rappeport and, on March 31, 1987, again granted custody of the child to Turner. Williams filed an appeal to the Court of Special Appeals of Maryland, challenging Judge North's refusal to recuse himself despite his status as a party defendant in certain of this litigation in this federal court. The Court of Special Appeals remanded the case to the Circuit Court for Talbot County for further proceedings.

The child reached the age of majority on November 10, 1989, her eighteenth birthday. As a result, the custody question is no longer an issue in the underlying state case. The remaining issues in *Turner v. Williams,* back child support and attorney's fees, were set for a hearing in the Circuit Court for Talbot County, Judge Shirley Jones presiding, on August 13–14, 1990. As a consequence of the child reaching the age of majority, it would appear that plaintiff's claims in this litigation in this Court for injunctive relief have been rendered moot, and that only plaintiff's within compensatory and punitive damages claims remain.

In connection with some of the state court proceedings held with respect to certain of the matters referred to *supra,* The Star Democrat and The Kent County News, two Maryland publications owned by defendant Chesapeake Publishing Corporation, published in their newspapers articles alleged by plaintiff to contain defamatory statements about him. Plaintiff further alleges that defendants Baker and Turner defamed him on several occasions, and that Turner intentionally inflicted emotional distress upon him.

## II. LAW

### A. *The County Defendants*

 The defendant Maryland counties, *i.e.,* Talbot, Caroline, Queen Anne's and Cecil, have each filed motions to dismiss plaintiff's complaint in Civil No. K–85–3088 for failure to state a claim against them pursuant to Federal Civil Rule 12(b)(6).[5] In his complaint, plaintiff contends that each and all of the county defendants are liable for compensatory and punitive damages

---

5. Those said motions are hereby treated under Federal Civil Rule 12(b) and 56 as summary judgment motions because of the presence in

the record in this litigation of documents other than pleadings.

pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 as a result of alleged procedural and substantive violations of plaintiff's constitutional rights caused by the denial to plaintiff of due process of law and equal protection.

Plaintiff's claims against the four counties appear to be premised on the legal theory that Maryland circuit court judges are the highest legal officials or officers of the county in which they sit. In that capacity, argues plaintiff, circuit judges are responsible for adopting, implementing, executing, promulgating, creating and deciding the county's official legal policy and governing laws by which its people are bound, thereby rendering the county responsible for monetary damages for any improper legal official policy, act or decision by such judge which results in a deprivation of a citizen's rights protected by the Constitution or by applicable law. According to plaintiff, the conduct and actions alleged in the complaint were performed by the defendant circuit court judges individually and in their capacities as a county's highest official legal decision making and legal policy making officer. The judicial defendants, whose claims against them have been dismissed by a prior order of this Court, sat on the circuit courts for the four county defendants sued in this litigation.

In support of his claim that the Maryland counties may be held liable for the decisions, policies, and actions of an individual circuit court judge whose jurisdiction and judicial authority is coextensive with the boundary of the county in which he sits, plaintiff notes that a municipality may be held liable as a "person" under section 1983 for the wrongful conduct of its employees when unconstitutional action is taken pursuant to official policy of the municipality. *Monell v. N.Y. City Dep't of Social Services*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). According to Williams, the circuit court judge for each county is the highest judicial decision maker within the state for the particular county of which he is a circuit judge. He is the legal policy maker or officer for such county, constitutionally and legisla-

tively charged with adopting, executing and promulgating legal policy for the county. Thus, plaintiff claims, any legal policy implemented by a circuit judge is an act under color of state law and becomes officially adopted and binding upon his county.

In support of his theory, Williams cites to the Maryland Constitution and to Maryland statutes which declare that the judicial power of the State is vested, *inter alia*, in the circuit courts, MD. CONST. art. IV, § 1, and that "[t]he circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State," and further, that each circuit court "has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county...." Md.Cts. & Jud.Proc.Code Ann. § 1–501 (1984). In addition, the Court of Appeals of Maryland has long considered circuit courts to be county courts, citing *Manly v. State*, 7 Md. 135, 146 (1854). A circuit court judge always signs judicial documents as the circuit court for a particular county rather than for the State of Maryland. Finally, as plaintiff notes, a circuit court judge is elected to a fifteen-year term by the citizens of the particular county in which he or she serves.

The county defendants contend that they cannot be held liable for the acts of a judge of their respective circuit courts since circuit court judges are independent constitutional officers under Maryland law.

Article IV, §§ 1–5 of the Maryland Constitution divides the State into judicial districts or circuits and sets forth the qualifications and procedures for electing, removing and replacing circuit court judges. The salaries of circuit court judges are paid by the State of Maryland rather than by the counties in which they sit, and are established by the Maryland legislature as a part of the State's budget process after the Governor and legislature have reviewed recommendations from the Judicial Compensation Commission. Md.Cts. & Jud. Proc.Code Ann. §§ 1–701—1–708. As the Maryland Constitution and statutes make clear, circuit court judges are constitutional officers of the State, elected, or appointed

by the Governor, to a constitutionally created office, and are compensated by the State. Such judges act independently of State and local government in the performance of their duties to decide cases. Their election by voters of the county in which they preside is mandated by state, rather than county, law. Thus, while the "color of state law" component of section 1983 may perhaps be satisfied by a showing that an official act of a defendant judge was the product of a conspiracy involving the judge and other private parties, *see Dennis v. Sparks*, 449 U.S. 24, 28–29, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980), in this instance, there is no nexus, factual or legal, between such judicial action and county governmental policy. Consequently, plaintiff's contention that a circuit court judge is a policy maker for the county in which he or she sits, for purposes of section 1983 liability, is erroneous. For that reason alone, plaintiff has failed to state a claim against any of the four county defendants under section 1983. In addition, with regard to plaintiff's claim for punitive damages against the four county defendants, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).

B. *Lloyd Anderson and DSSKC*

■ Defendants Lloyd Anderson and DSSKC have filed motions for summary judgment in Civil No. K–85–1646. Those defendants contend that they are entitled to summary judgment on the basis of the Eleventh Amendment, qualified immunity, and also because the complaint fails to state a claim upon which relief can be granted under 42 U.S.C. §§ 1983, 1985 or 1986.

Plaintiff contends that the DSSKC and Anderson, as its Director, deprived plaintiff and his daughter of their familial relationship, failed to apply state law regarding foster care placement procedures, and did not comply with a state court order, which awarded to DSSKC custody of the child and directed that agency to place the child in a foster home. According to plaintiff, those two defendants allegedly refused to remove the child from her mother, the custodial parent, who had been adjudicated morally unfit. Finally, plaintiff alleges that those defendants failed to return the child to her natural father, plaintiff Williams.

At the outset, it should be noted that all of plaintiff's claims for injunctive relief have become moot and that, therefore, only plaintiff's claims for monetary damages remain viable.

Under the Eleventh Amendment, a state or one of its agencies is immune from damages in suits brought in federal court by its own citizens or citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, ——, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45, 58 (1989), the Supreme Court concluded that in enacting 42 U.S.C. § 1983, Congress had not intended to abrogate a state's immunity to suit and that the term "person" in the statute therefore does not include states or state officials acting in their official capacities. "Moreover, it is well settled that the Eleventh Amendment bars a suit against a state agency, entity or institution, such as the Department of Social Services and its governing body, the State Board, which functions as an arm or *alter ego* of the state." *Jensen v. Conrad*, 570 F.Supp. 91, 97–98 (D.S.C.1983), *aff'd*, 747 F.2d 185 (4th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)).

The DSSKC is a state agency. *See* 61 *Opinions of the Attorney General of Maryland* at 786; *see also* 67 *Opinions of the Attorney General of Maryland* at 356 (1982). Therefore, defendant DSSKC is immune under the Eleventh Amendment from the damages claimed by plaintiff.

Defendant Anderson is sued individually and in his official capacity as Director of the DSSKC. A suit against a public official in his official capacity is treated as a suit against the governmental agency in

which he serves and is, for all purposes, a suit against the agency. Consequently, "damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity itself." *Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982). *See also Jensen,* 570 F.Supp. at 98. A suit which seeks to impose liability upon a state official which must be paid from state funds is barred by the Eleventh Amendment because it is treated as a suit against the state itself. *Id.* at 98. Therefore, the claims against Anderson in his official capacity are barred by the Eleventh Amendment.

Defendant Anderson contends that plaintiff has failed to state any claim against him in his individual capacity which can be the basis of an action under section 1983. However, as plaintiff points out, " 'the relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection' " and that " '[S]tate intervention to terminate [such a] relationship ... must be accomplished by procedures meeting the requisites of the Due Process Clause.' " *Dykes v. Hosemann,* 743 F.2d 1488, 1493–94 (11th Cir. 1984), *cert. denied,* 479 U.S. 983, 107 S.Ct. 569, 93 L.Ed.2d 574 (1986), quoting *Lehr v. Robertson,* 463 U.S. 248, 258, 103 S.Ct. 2985, 2991, 77 L.Ed.2d 614 (1983), and *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982). In *Dykes,* the Eleventh Circuit concluded that a mother who alleged that she had not been given notice or a hearing before a dependency adjudication deprived her of custody of her child, allegedly as a result of a conspiracy among a judge and private parties, had "at least stated a § 1983 procedural due process claim." *Dykes,* 743 F.2d at 1494. Thus, plaintiff Williams, who raises substantially similar allegations in the instant litigation, has stated a constitutional claim which can be the basis of a federal action under section 1983.

■ In addition, defendant Anderson asserts that plaintiff Williams' complaint against him in his individual capacity should be dismissed under the doctrine of qualified immunity because defendant Anderson's alleged conduct did not violate clearly established statutory or constitutional rights of which a reasonable person should have known. According to the allegations in the complaint, plaintiff contends that Anderson refused without legal justification to take custody of the child and to place the child in foster care and/or to remove the child from the physical custody of the mother who had been adjudicated unfit, all in alleged violation of a state court order and in violation of the Maryland Foster Care Act, Md.Fam.Law Code Ann. §§ 5–524—5–525. Specifically, plaintiff contends that after Judge North ordered that the child be placed in the temporary custody of the DSSKC on January 18, 1985—a placement which was to place the child in a suitable foster home from which she could attend the school in Chestertown—defendant Anderson and the DSSKC failed either to place the child in a suitable foster home or to remove the child from the custody of defendant Turner, who had been adjudged unsuitable as the child's custody parent. Furthermore, plaintiff contends that the DSSKC refused to take the action ordered by the Maryland court despite the fact that plaintiff's blood brother and blood uncle agreed to provide foster care for the child and despite the findings of the DSSKC that there was no evidence of abuse of the child by her father, plaintiff Williams.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court wrote that

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit resolution of many insubstantial claims on summary judgment.

*Id.* (citations and footnotes omitted). On the basis of the record presented in this case, reviewing the facts in the light most favorable to the plaintiff, Anderson is not, in the present summary judgment context of this litigation, entitled to qualified immunity. The DSSKC and Anderson were bound by Judge North's order of January 18, 1985, and also Maryland statutes generally, with regard to placement of the child in suitable foster care. Defendants' responsibilities, as mandated by such order and by such statutes, were quite clear. Moreover, at the time those alleged violations occurred, it was clearly established that "the relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection." *Lehr,* 463 U.S. at 258, 103 S.Ct. at 2991; *Santosky,* 455 U.S. at 753, 102 S.Ct. at 1394–95.

At the time of the filing of Anderson's motion for summary judgment, no formal discovery had taken place. Although this Court finds that dismissal of the complaint as to Anderson in his individual capacity on the basis of qualified immunity would be inappropriate at this stage of the litigation, this Court makes no determination, at this date, with respect to any future motions after discovery has been completed, or, indeed, with regard to how much, if any, discovery will be appropriate.

## C. *Chesapeake Publishing Corporation*

■ Defendant Chesapeake Publishing Corporation (Chesapeake) moves to dismiss the claims against it in Civil No. K–85–3088 for lack of subject matter jurisdiction pursuant to Federal Civil Rule 12(b)(1). The only claim asserted against Chesapeake is that Chesapeake defamed the plaintiff when two of its Eastern Shore newspapers published an article describing the plaintiff's actions concerning his custody case. Specifically, plaintiff contends that the article, which suggests that the plaintiff admitted to abusing his child, were untruthful and defamatory. As a result of that alleged libel, plaintiff seeks compensatory and punitive damages.

In his complaint, plaintiff contends that he is a citizen of Maryland and that Chesapeake is a Delaware corporation with its principal place of business in New York. Consequently, plaintiff claims that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 by virtue of diversity of citizenship. However, Chesapeake contends that while it is incorporated in Delaware, its principal place of business is in Maryland.

For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business for diversity purposes may be established through the "'home office'" test, the "bulk of corporate activity" approach, *Mullins v. Beatrice Pocahontas Co.,* 489 F.2d 260, 262 (4th Cir. 1974), or the "nerve center" standard, 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 3625 at 620–21 (1985). The "general rule" is "that the bulk of corporate activity, as evidenced by the location of daily operating and management activities, governs the choice of a principal place of business.... [W]hen a corporation divides its operations among more than one state, but its activities in one of those states clearly exceeds all of the activities in other states, the state with the largest volume of operations is the principal place of business." *Id.* § 3625 at 625–29 (footnotes omitted). The operative date for determining the existence of diversity jurisdiction is the date on which the lawsuit is filed. *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113–14 n. 1, 1 L.Ed.2d 1205 (1957); *Mullins,* 489 F.2d at 261.

According to an affidavit of Charles A. Chalka, Group President of Chesapeake, appended to Chesapeake's January 11, 1988 supplemental memorandum in response to this Court's order of December 3, 1987, during the year ending December 31, 1985, Chesapeake had a total business sales and/or receipts of approximately $26,352,-000; of that sum, almost $23,000,000 in sales or receipts, approximately 87% of the

total, was derived from Maryland services. In 1985, fifteen of Chesapeake's twenty regular publications were published in Maryland. During that same year, the total value of Chesapeake's tangible property was slightly below $12,000,000; tangible property representing more than $11,000,000 of that total was located in Maryland. Similarly, in 1985, Chesapeake paid total wages and salaries of $6,829,701; of that total, wages and salaries of $5,733,611 were paid in the State of Maryland. Furthermore, Chesapeake's principal office is located in Easton, Talbot County, Maryland, and all corporate policy decisions are made at that office. All active officers of the corporation who are paid a salary are residents of Talbot County. Finally, Chesapeake designates Easton as its principal place of business in all of its tax and governmental filings.

None of the evidence offered by plaintiff in support of his theory of New York citizenship of defendant Chesapeake is germane to the issue of diversity jurisdiction before this Court. Plaintiff's contention that Chesapeake is a wholly owned subsidiary of Whitney Communications Corporation which has its offices in New York is unavailing. *See Caperton v. Pocahontas*, 420 F.Supp. 445 (W.D.Va.1976), *aff'd*, 585 F.2d 683 (4th Cir.1978):

> "[W]here the corporate separation between a parent and subsidiary, 'though perhaps merely formal', is 'real' and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise."

*Id.* at 450–51, quoting *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405, 410 (N.D.Cal.1970). Thus, for purposes of diversity jurisdiction, Chesapeake is a citizen of Maryland. As a result, plaintiff cannot rely on 28 U.S.C. § 1332 as a basis for subject matter jurisdiction.

■ Plaintiff, however, contends that even if diversity of citizenship does not exist by virtue of Chesapeake's Maryland citizenship, this Court may still retain jurisdiction by virtue of pendent jurisdiction or ancillary jurisdiction. In support of that alternative theory, plaintiff asserts that his defamation claim against Chesapeake derives from a "nucleus of operative fact" "common" to his civil rights claims because the question of whether plaintiff abused his child will be at issue with respect to both his civil rights and defamation contentions. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

Ancillary jurisdiction is hardly appropriate in this instance. In that regard, it is noted that it is plaintiff, rather than another party to the proceeding, who is bringing this state law defamation claim against a non-diverse defendant. *See C. Wright, Law of Federal Courts*, § 9 at 28, 31 (1976).

Plaintiff's pendent jurisdiction theory confuses that concept of jurisdiction over pendent claims with that of jurisdiction over pendent parties; it is only the issue of pendent parties which is before this Court. Pendent claim jurisdiction arises when federal jurisdiction exists with respect to the primary claim against a defendant, and the plaintiff then attempts to join an additional state law claim with its federal claim against that same defendant. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130. In the within litigation, plaintiff seeks to assert jurisdiction over a pendent party, namely Chesapeake, which is not a party to plaintiff's federal section 1983 claims against the remaining defendants in Civil No. K–85–3088. No independent basis for federal jurisdiction over plaintiff's state law defamation claims against Chesapeake exists. Rather, plaintiff seeks to obtain jurisdiction over Chesapeake as a pendent party on the basis that a state law claim of defamation allegedly arises from factual issues which this Court must resolve in connection with a separate federal claim against other defendants. That contention is untenable in the light of the Supreme Court's recent decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). "[W]here there is no independent basis for federal jurisdiction over the party against

whom only a state law claim is asserted at the inception of the action, there is no pendent jurisdiction, even where the state claim is closely related to the federal claim." *Staffer v. Bouchard Transportation Co., Inc.*, 878 F.2d 638, 643 n. 5 (2d Cir.1989), citing and summarizing *Finley v. United States*, 109 S.Ct. at 2010. "Under *Finley*, pendent party jurisdiction does not exist merely by the fact that Congress has failed to negate it. Rather, pendent party jurisdiction exists only where Congress has *affirmatively granted* such jurisdiction." *Lockard v. Missouri Pacific R.R. Co.*, 894 F.2d 299, 301 (8th Cir.1990) (emphasis in original). Thus, after *Finley*, "pendent-party jurisdiction apparently is no longer a viable concept," *Staffer* at 643 n. 5, and "[i]t is not surprising that lower courts are reading *Finley* as putting an end to that jurisdiction." 13B Wright, Miller & Cooper, § 3567.2 at 25 (1990 Supp.). Accordingly, since no independent basis for plaintiff's claim against Chesapeake exists, and Congress has not specifically granted pendent party jurisdiction under §§ 1983, 1985 or 1986, Chesapeake's motion to dismiss the complaint, treated as a motion for summary judgment,[6] will be granted.

### III.

This Court will rule with regard to other pending motions after it receives up-dated status reports concerning certain proceedings in one or more of the courts of the State of Maryland.[7] Plaintiff and counsel for all defendants against whom plaintiff's claims in this litigation have not been dismissed are asked to submit such reports in writing, on or before January 14, 1991.

---

6. *See* note 5, *supra.*

7. *See* note 2, *supra.*